Joseph Alioto v. Clayton Antitrust Act This whole odyssey to get Mr. Kelleher's deposition began two years ago. What has happened to the antitrust case in the interim? What's been going on for the last two years in the New York case? Most of the discovery was completed, Your Honor. It is now in front of the New York court, and we are attempting to set a trial date. However, since the conclusion of a number of the discovery in the case, certain actions have taken place, so there is outstanding discovery with regard to the executives. So it's still – the case is still ongoing? Yes, Your Honor. Okay. All right. Now, let me ask you this. I've read the record twice and could have missed it, but I didn't see anywhere where anyone listed what it is you have to prove to win your case in New York. Is that listed somewhere, and I overlooked it? Well, the underlying case, Your Honor, is – I understand it's a Clayton Section 7 Antitrust Act, but is there anywhere where it's listed other than me going and delving into the statute and all that? Is there – have you listed what it is that you need to prove to win your case in New York anywhere in this record? Well, in this record, no. This one is just with regard to taking the deposition of Mr. Kelleher. Okay. Well, just taking the deposition of Mr. Kelleher, we're back to this question of relevance. And however broadly defined it is, Rule 26 says it has to be relevant to a claim or defense, and nobody's contended there's any defense in question. So – and the only claim is this Section 7 Act, so don't we need to know what you need to prove to know whether Mr. Kelleher could possibly know anything relevant to that? Well, of course, and as the court below found, obviously the conversation that we allege took place, and we have the evidence of it, was between competitors and that it was relevant to the underlying clause. Well, I think relevance is a question of law, so I'll appreciate what the magistrate judge said. I don't have to agree with it. And I frankly am having trouble with what – you said it's a conversation between competitors. Mr. Kelleher at the time, as I understand it, had no role other than Chairman Emeritus, which sounds like kind of a dignitary role, in Southwest at all. I mean, yes, he's identified with Southwest. He's the guy that came up with it on the napkin and all that. Okay, that's great. But he – what – how is this a conversation between competitors when Mr. Kelleher has no role at Southwest and no access to the kind of information that would have mattered, you know, routes and prices and all of that? Well, with all due respect, and contrary, Your Honor, under the lessening of competition, these are two powerful competitors. They chose to go to and speak with Mr. Kelleher because they believe of his influence, and that was testified to by Mr. Parker, the chief executive officer of US Air. Mr. Alioto, I asked a really specific question. How is Mr. Kelleher, in 2012, who's last worked at Southwest in 2008, an employee or officer of a competitor at the time of these conversations? As the court can see from the document that is in camera and under seal at the moment, Mr. Kelleher had voiced a certain opposition to – apparently to the merger. I don't want to reveal what it actually says. And then the whole purpose of the meeting was to convince him otherwise, and I can say at least this, I suppose, in Mr. Parker's words, to make him comfortable and to let him know that the merger would be positive for them. And that is a major part of the allegation of lessening of competition, which allows the consolidation and the reference by Mr. Kelleher to Mr. Parker as you can see in the document. I mean, to me it seems to me like Mr. Kelleher, it's less about what he said to these guys, and the Horton thing to me is just silly, but the Parker conversation, whatever it was, whether it was about Texas politics or something else, it seems more like he's really being asked as an expert witness to tell us how this is going to affect Southwest. His conversation with Mr. Parker, I don't understand how this makes it more likely or less likely, other than his expertise as an expert, but factually how it makes it more or less likely that American and U.S. heirs merger is going to violate the Clayton Act. That's what I'm trying to get to. Well, as Your Honor knows, under Section 7 of the Clayton Act, the lessening of competition, the reason for it is because it allows the consolidation and these people to begin to fix prices and to limit capacity, which, as people now know, is exactly what the government is investigating again. And that is because they're going to the chief executive officer, former chief executive officer, they are discussing this particular merger, they are giving assurances. He is told, now he may not do it, he's warned that this is a meeting that will have bad repercussions, and he is asked to keep it secret. And then when Mr. Parker goes to see him, Mr. Kelleher flat out denies this. Mr. Parker, as we point out, does not because he was confronted with his own email. The fact finding that Judge Ramirez did make was that there were not inconsistencies. I don't really see an inconsistency between Parker and Kelleher here. He didn't say he didn't go to Eddie V's. He said he went, they talked about Texas politics, and if you want to make Texas happy, keep your headquarters here and call it American Airlines. Well, if the court would please... Sorry, Your Honor. That's not inconsistent with what Parker says. If the court would please look at the email. And that is the reason why we have the email and why it's under seal, and that is because it will impeach Mr. Kelleher. Mr. Kelleher is dead wrong about his affidavit, and that is the reason why we have it. And if you look at it... I guess I'm still having trouble with how Mr. Kelleher could know the kind of... You know, when you have two CEOs meeting and talking about prices and whatever, that seems like quintessential, frankly, not Clayton Act antitrust, but it's nonetheless quintessential antitrust violations or Section 7. But here you have a guy who he hasn't been involved in that for years, so he doesn't know about the route to Key West. He doesn't know about how much they're charging. He doesn't know about whether they want to be more in Key West or less in Key West or more in New Orleans or anywhere else, and those are really convoluted. I mean, they change these routes every day, it seems like. He's not involved in that anymore, so how can he have impact in an antitrust sense? I mean, to me it seems like you're really saying the essence of Mr. Kelleher is his expertise, and I don't think you get to force someone to be an expert witness. It has nothing to do with it, Your Honor. It has to do with two high executives getting together and discussing the outcome of what would be beneficial to them by reason of the merger and that he previously objected to it, and his statements apparently have very significant force, as Mr. Parker testified, in the airline industry, and now he's going there to placate him in order to get his agreement and understanding that it is okay to go forward with this merger. Well, what if instead of being a former executive he was a congressman who was making statements or a reporter who was attacking the merger and they went and had dinner? This is a competitor, Your Honor. But he's not anymore. That's the problem. I don't see the difference between Mr. Kelleher in 2012. I do in 2001, but in 2012 and a reporter or a congressman or a well-known community activist or anybody else who can cause trouble for American and USAir. How is he different legally because he doesn't have that role anymore? That's what I'm trying to understand, and you really haven't answered that. If the court would read the portions of Mr. Parker and also Mr. Vahiny, that Mr. Kelleher is considered to be a so-called icon in the industry and that he is the one who was directly voicing opposition and that that opposition, that he carries great weight. In fact, he is the weight of Southwest. That Mr. Parker decided to go see him and not the so-called president of Southwest. Everyone understands the position of Mr. Kelleher. He's not a congressman or anything else. He is a major competitor, and he has substantial influence. And the question, I think, would be answered very simply. At the time of the conversation, was he still on the emeritus board? Pardon me? Was he still on the emeritus board at the time of the conversation? I don't know, Your Honor, whether he was on the board at that time or not. What we know is that Mr. Parker and others would approach him with regard to major decisions that might impact Southwest. What's your best circuit authority for reversing a protective order that quashes a subpoena? What's your best circuit where it's reversed given the discretion that's allowed? I don't think that there is any case anywhere in which conversations— I don't know of any case in which conversations between competitors about the future conduct of a potential violation has ever been disallowed. No, my question is, given a protective order that quashes a subpoena, what's your authority, your best authority for a circuit court saying, in spite of the discretion you've got over discovery matters, we're reversing you because it wasn't an undue burden or the evidence was relevant? Well, first of all, I think the judge below said there was no burden at that time to sit on a deposition for two hours. Again, all I'm asking for you is the best guiding authority on how we would approach the question of is there an undue burden, as might be suggested from these hearing transcripts, because there's no specific written order. She just incorporated her oral statements. Or instead, in the balancing under 26, did she say that it's so irrelevant that even the burden of a one-hour deposition would imbalance using our six factors? The court said both, that it was relevant, and she conceded that there would be no burden. And we cited that at page 4 of our reply. Okay. So, well, let me rephrase it then. Do you agree that a magistrate will decide these protective orders based on balancing, weighing the six factors we identified in our WIWA decision? Do you agree that that's what the lower court is supposed to do? Well, I think that the court should know that that particular portion, that was a rule change, and that 26B2C3 was changed. And so right now it's simply whether or not it's outside the scope permitted by Rule 26. Okay. But, Your Honor, I'm just asking what does 26 tell lower courts? What are they permitted, in your mind, to do? What do they balance before they decide whether to quash or not? They decide the relevance and they decide the burden. Right. Okay. That's correct. And so what circuit authority have you ever seen that reverses that balancing, that weighing of those two factors, hardship and relevance? Does the court mean as a matter of law or in an antitrust case? Well, I'm asking you for any case. Well, almost any major antitrust case in the Supreme Court always allows evidence of conversations between competitors. Okay. That's fine. With regard to, as a matter of law, whether or not it would be reversed of what you would decide, the judge herself said you have one side of the conversation. That's enough. You have Mr. Parker's side of the conversation. That should be enough for you. That's not enough. Could you develop below or in your brief for us what the substantial burden would be, the substantial prejudice to your case, your Clayton Act case? Yes, because it would show a lessening of competition, an effort to lessen competition by reason of a violation of Section 7. But isn't the lessening of competition, if you will, the actual effect on Southwest rather than Mr. Kelleher's opinion about it? So if, in fact, they're now going to cut the Key West route because they now can have the Las Vegas route or something that's more profitable, that's a fact that you can prove and will need to prove because that's your lessening competition. So if Mr. Kelleher says, I think it's going to lessen competition, but he's just dead wrong. In fact, competition has just skyrocketed since. What difference would his opinion make? That's why I think he's more of an expert witness than anything else in this scenario. And I don't see what difference his opinion about whether it helps or hurts Southwest makes. Your Honor, your Honor is casting this as if it were an opinion. There's no opinion here. There's very powerful two people who are about to lessen competition in a substantial way by the merger. Okay, this is a lawsuit. Your lawsuit that you just articulated is against American and Southwest for conspiring, but that's not your case. Your case is that the merger of American and U.S. Air will lessen competition, and this conversation with Mr. Kelleher proves that. And Mr. Kelleher hasn't been in any official role, Chairman Emeritus nobody's shown me means anything, in four years at the time of this conversation. So I'm saying other than his opinion being, and I don't mean to disregard Mr. Kelleher's opinion, I'm sure he has more to base an opinion on than your average person, but nonetheless, it's simply his opinion, and I don't see what difference it makes in making your case more or less likely that this merger will or will not harm competition. As the court, obviously, I believe as the court knows from the Parker deposition and from Mr. Horton's statements, where he was going to go after American, was coming out of bankruptcy, and one of the things they were going to do, and he spoke directly to Mr. Kelleher and told him he was going after Southwest. Now the merger would stop that, and it did stop that, and that's why Mr. Parker went to see him. And that is exactly what he talked about and why he asked him to keep it secret, and why he said they were taking a big chance doing that. All right. You have reserved time for a bottle. Thank you, sir. Thank you, Your Honor. Can you answer that, whether Mr. Kelleher has any official role, I mean whether this title of Chairman Emeritus means that he has access to confidential information at Southwest as of 2012? Yes, I can. In fact, it may please the Court. I can't crave it for appellee Herbert Kelleher. Yes, the Chairman Emeritus position, he does not have access to any of the underlying data. In fact, that's found in his affidavit as well as Southwest's affidavit, which was at the time. And there's no contrary evidence that he really is secretly getting all this kind of information? None at all. So then even if we assume, arguendo, that Parker and Kelleher did talk about more than just, well, call it American and keep it in Texas if you want to make the Texas people happy, would it make a difference to their Clayton Act case? No. Of course, they did not speak about that, and the record, I believe, shows that clearly both from Mr. Parker and from Mr. Kelleher's affidavit. However, even if they did, I think no – well, I'm not exactly sure because I don't know what the elements are that they have to prove up there. And they certainly haven't told us that, have they? It could be – no, they have not. It could be relevant. I do not think what they spoke about is relevant, but it could be, and you're hypothetical. It could be relevant. However, that doesn't mean that his deposition was warranted. But it's relevant only because of Mr. Kelleher's opinion. Absolutely. So it's not that Mr. Kelleher says, well, we're going to raise fares 30 bucks if we don't have to compete with American Airlines anymore at this or that location, and we're going to pull these non-profitable routes in Branson and Key West because we can go and get this or that over here if we're not having to worry about U.S. Air. I mean that's the kind of discussion that could potentially be relevant. But his opinion that, well, Southwest will be benefited or not benefited when he's four years removed from a position of authority, I'm just struggling why that makes any difference other than any other person's opinion, my opinion or a newspaper reporter or a congressman. That's what I'm trying to get at. I don't understand the relevance here. I agree with you. I do not believe it is relevant, which is why the district court did not abuse our discretion in providing a protective order and quashing the deposition. There's no relevance at all. Well, maybe start back a step because the order itself says the reason that I'm quashing is those stated on the record during the hearings. So quote me from the hearings what you think was the reason. It wasn't harassing, and I don't see that it was an undue burden. So it has to have been that it's not relevant, and yet she said under a broad definition of relevance it is relevant. Well, of course, under the deferential abuse of discretion standard, it could be anything included in the record. And so in the briefing that was reviewed by the judges, in the oral arguments before the court, in the in-camera documents. She said that she's quashing for the reasons stated on record during the hearing. That is correct. So what reason does she give that you rely principally on? Well, it was arguments made to her and then also reasons that she spoke. Again, what's the reason she said that you rely on principally? Absolutely. Really, it's the review, and she had found that it was not relevant based upon the affidavit supplied by both Southwest Airlines and Mr. Kelleher. And then also at reviewing the in-camera documents, by the way, which we have never seen to this date. So I'm not exactly sure what they say, but two judges, of course, looked at those documents, and now I'm sure you looked at those documents. Because the rule can't be that a party opponent can say, well, I deny knowledge in the conversation. And then the person being subpoenaed submits an affidavit saying, yeah, I don't want to, and then you get a pass. Agree, and that is not the case here. It looks like that's exactly what she held. She said it's cumulative of other sources, hence the party opponent himself denying the meeting, or the self-serving affidavit denying. Let me cite to you what she said after reviewing the in-camera documents. Just before that, there was a case brought by Mr. Aliotto against Southwest Airlines on the heels of this subpoena. We put that on page 5 of our papers. But she didn't find harassment. Well, she did not specifically cite that. However, she did hear that testimony about it being harassing, and we pled that in our petition. Secondly, then, she found that it wasn't relevant based upon the affidavits. Then she looked at the in-camera documents, and she stated, after reading those in-camera documents, she stated, and if I look at the appellant's in-camera submission as a whole, it's not inconsistent with Mr. Kelleher's affidavit. That's on page 18 of our brief. And I can give you the records, if you'd like. So you're saying you can't see those, haven't seen them. To me, that would be, therefore, much more determinative. If she looked at other evidence to conclude irrelevancy. I don't see how we would craft a rule that would say she can look at the person seeking to avoid deposition's self-serving statement. We are not asking you to create that rule today. Nor would we look at Parker's statement, of course, as the party opponent. So it's got to be that in-camera stuff. Well, I think it's all of it. I think Rules 26 and 45 empower and give broad discretion to the district court judges to look at all of it, all of the backdrop, and determine and weigh the balances, apply the WIWA factors, and determine, you know what? Yes, there needs to be a motion for protection here. This deposition should not go forward. Is the question of relevance a legal question or a factual question? Well, Your Honor believes it's a legal question and has already stated that. I believe that the judge needs to look at the evidence presented and decide whether it is tied to the claims or defenses. To me, I don't see how it can be other than. Now, I'm not saying people can't disagree on what's relevant. That's a different question. We disagree on questions of law all the time. But I don't understand how that can be a factual finding, whether something's relevant. Whether something happened is a factual finding, but whether that's relevant to the case. You ran a stop sign today. Is that relevant to your qualities as a lawyer? That's a legal question. Whether you ran the stop sign is a factual question. What am I missing? Are you disagreeing with me? I mean I don't want to go off on a tangent that's wrong. No, I'm not disagreeing with you, and I think Judge Ramirez and then Judge Lindsey made both determinations. They decided that the conversation did not include information that was tied to the antitrust case. I believe that's factual finding. Judge Lindsey doesn't do that. It's a de novo review, but there's no elaboration at all. Did Judge Ramirez ever say, here are the elements of the Clayton Act case, and it's irrelevant to those? No, they were never presented. So she didn't do that either? No, she did not because they were never presented to her. What she said is they had not articulated anything, and there wasn't anything in the entire record that showed – She said it was cumulative. Cumulative of what? Well, the part that was cumulative was he had irrelevant information he could share, which was they talked about Texas politics. They talked about what you might name a new airline or where that headquarters might be. That's not tied to the – Well, that's taking his characterization and the party opponent's characterization for what they talked about, but that can't be the rule. That's correct. And there was no other information at all that either judge found showed otherwise. I thought relevancy – the Oppenheimer decision describes relevancy, correct? Yes. And my background is criminal, so I'm thinking Rule 17, the criminal rule. No conceivable relevance. At these early investigative stages, subpoena, grand jury subpoena, other, the relevance standard is about as rock bottom as you can get. No conceivable relevance. And here you have the party opponent meeting with the chairman emeritus, and it's a conversation with no burden. It's a one-hour deposition. Why would you ever quash – what's the best case that says – circuit level that says we've got to quash that? That's a hardship. You don't need to show up because it's just minimally relevant. Well, I don't think that's the standard. I think the standard is, again, it's a balancing act weighing the potential relevance, and it has to be – again, it has to be relevant. What case do you have where a court uses Rule 26 and 45 to quash a subpoena just for a conversation, no documents requested? What's your best case supporting quashing? Again, we are not arguing just for the conversation. I don't have a case that says that. But that's all they're asking for. They're not asking for documents, are they? No, no. They're asking to depose him based upon just a conversation that happened. Right. When you have – What case do you have where a magistrate or a district judge ever before quashed a subpoena limited as laser-like as this one to one conversation, don't bring any documents? Why? Because you met with the party opponent, and you both admit you talked about the merger. How could that not be conceivably relevant? Well, there's been no showing of conceivably relevance at all. Again, it needs to be relevant to their claims or defenses in the underlying class action antitrust suit. What's your best case that spells that out? Well, I think – It's the burden on them to go element by element. I think the application of the WeWa case. I think that WeWa factors – But WeWa was a reversal because the court didn't give a reason. Exactly. Here the court did give a reason. Okay, and that's where I started my questions out for you. What did the court say was its reason? I saw that it said cumulative. I can't understand that rule. To the extent it talked about relevance, the court itself said it was relevant, whether that's a legal or factual finding. So it's got to be sort of a hodgepodge that implicitly she said hardship to him to show up for an hour outweighs the minimal relevance that I've seen without really even spelling out how it's irrelevant. I just – I disagree that the court said that the conversations were relevant. In fact, I think she said just the opposite. She said while I agree the subject matter of the conversation between Mr. Kelleher and Mr. Parker, if it occurred would be relevant. That's speculative. She said and that it would not be an undue burden because it is a conversation that only Mr. Kelleher would be a party to. There's nothing here that says I did, in fact, have this conversation. They didn't have the conversation about the antitrust matters. They had a broad conversation about the merger, about the headquarters, and about the name of the airline. Do you know of any case that says Rule 17 is differently examined or is that off the left field than 26? I do not know that. Because if that were the answer, a non-party witness subpoenaed in a criminal case, and the answer was, well, okay, it was about a merger, but it wasn't about elements of the Clayton Act. There's just no way courts could quash those subpoenas if we started parsing out and saying here's my affidavit saying I don't know particulars, but I admit I had a conversation about this larger episode with the party opponent. I think what we have here is different again. What we have here is we have both the backdrop of a plaintiff who has brought claims against Southwest. On the heels of that, we have a subpoena of Southwest Airlines and Mr. Kelleher. Southwest Airlines was dropped. They went after Mr. Kelleher. And then you have Mr. Kelleher saying we didn't talk about any antitrust issues, and I don't have any knowledge about that anyways because I've been retired from the board since 2008. So if you win, if your argument wins, how would you write it so that it doesn't allow any recipient of a subpoena to say here's my affidavit. I didn't talk about that, or if I did, it was just too general to be of value. I would just say the district court's decision to enter the motion for protection is affirmed. Because we have to defer. That sounds like a good way to write it. Let me get back to one thing we haven't talked about. First of all, we haven't talked about the fact that Oppenheimer was construing a rule that's been revised, not just the most recent 2015 revision. But before that, it revised relevance to the subject matter and made it, narrowed it, relevance to claims or defenses, which they have yet to show me the relevance to the claim. Because we don't even know without ourselves going and doing a big antitrust review what the claims are. We don't have a copy of the complaint from New York. I tried to find it. We don't have any argument about what the elements are. And so it sounds headlining. Herb Kelleher meets with the CEO of American Airlines to talk about effects on Southwest because of who Herb Kelleher is. And yet as of 2012, he's no one, frankly, vis-a-vis Southwest other than the beloved chairman emeritus, blah, blah, blah. So that's point number one. Point number two is if he is someone, then you've got the Apex deposition problem. And you've got the problem that people are going to go around saying, well, I talked to you, I made this off, I said we're going to come get you or whatever. And so now this person gets deposed. And we do have, while not in the Fifth Circuit, a lot of cases on Apex where people are trying to get at Sam Walton, George W. Bush and all kinds of people just by saying something that only they can know. They're the only one who can know whether they knew this. And so that's the problem with it. That's what distinguishes Mr. Kelleher. If he's such a big icon, important guy, then he's in the Apex situation. If he's not, then they don't get to go depose the former janitor at Southwest either because he might know something about whether they have a lot of flights at Love Field or Louis Armstrong Airport or anywhere else. Is that fair? Yes. I realize that was kind of a long statement that helps you. But please tell me where am I off on this because you guys didn't argue that very hard that he's not even really the right – he doesn't prove anything one way or the other on Clayton other than as an expert. Yes. I mean I think we pointed out, and in his affidavit pointed out, that he had no access to this information to Southwest. By the way, Southwest is not a party to the American Airlines U.S. Airways lawsuit either. But even if they had relevant knowledge, he's not the right person at Southwest to answer the questions that they want answered. I mean it seems to me the case here that's being tried to be made is a Sherman Act to conspiring competitors. And that's different from a Clayton Act, Section 7, saying it lessens competition. That's really kind of what all the headline nature of this is, this idea that they're getting together, huddling as competitors to try to alter things. Not that the merger between American and U.S. Air is going to itself lessen competition. And I think that's where the magistrate judge got saying about the relevance is it sounds relevant to antitrust that you have. We're going to spot them the notion that Mr. Kelleher is a competitor talking about stuff, right? But actually that's not the lessening of competition we're talking about, American and Southwest. We're talking about American and U.S. Air merging and whether that lessens competition. And that, I don't see what this is relevant to. But I've said enough. And to Judge Higginson's point, we made that argument in our pleadings repeatedly that Mr. Alioto, with all due respect, has gone after Southwest Airlines on many occasions. He had just come off a Ninth Circuit decision dismissing an antitrust case related to Air Trans Southwest merger. He has other lawsuits currently pending against Southwest Airlines. And we believe it was a phishing expedition. Not only that, the information that Mr. Kelleher did have that he was communicating in the meeting with Mr. Parker was information of a person at least five years removed from any role at Southwest other than Chairman Emeritus, which does not give him access or any persuasion with what the company is doing at this time. Even – I want to jump to the last point. Even if the district court did abuse their discretion, I think it's fairly clear that appellants have not met their burden to show how the district court's order prejudices them in the underlying lawsuit. Now, Mr. Alioto got up here and said it prejudiced them in their Clayton Act claim, but they didn't plead that. What they said was – in their pleading to this court, what they said was, without any support, that the district court's limitation of the discovery sought by appellants will negatively affect substantial rights to prosecute the New York case. That's too general. You need to show both that there's abuse of discretion and precisely how the rights will be affected. Has the judge in New York opined on whether this deposition should go forward? No, he's not, to my knowledge. Okay. At first he said he would show them to us, but he couldn't because of a protected order. I don't understand why y'all haven't seen them yet because I thought she ordered them produced, and I don't see anything to the contrary. So why have you not seen them yet? Mr. Alioto asked for a stay, which the judge granted to him. Because you're really – this is a difficult argument to listen to because you don't know what's in there other than all this allusions to it. That's right. We believe it's been gamesmanship from the beginning because what we think's going on is Mr. Alioto wants to get Mr. Kelleher, a very important person in the commercial aviation and airspace area, and he wants to harass him with some documents. And he wants to have his day, even if it's an hour, to get with the great Mr. Kelleher. We just don't believe there's any relevance. We believe it would be an undue burden. Again, there were two hearings in front of Magistrate Ramirez. There was a full de novo review by District Court Judge Lindsey where he looked at all the oral arguments. He says that right in his order. He looked at all the pleadings, the oral arguments, the evidence. And did anybody ask Judge Lindsey to make more detailed findings or request any findings that weren't made? Not further from what he did. Okay. But he did incorporate all that into his order, and he found that she did not err. They weighed the factors, and they exercised their discretion under Rules 26 and 45 to enter a protective order. And here, when you look at the record as a whole, there was nothing that was arbitrary or clearly unreasonable. Rather, it was well-reasoned, well-thought-out over a period of many, many months. The testimony, I think, shows clearly, including the in-camera documents, that Mr. Kelleher had no information relevant to the antitrust suit. Is the burden on the party moving to Quash to show irrelevance? Yes, it is. So you accept that burden. Absolutely. It's not their burden to say it's relevant to Clayton Act here, here, and here. It's your burden to show that it is not relevant. So where did you spell out how it wasn't relevant given the Clayton Act claim? Absolutely. I can see I'm out of time. May I please answer? Sure. The – in Mr. Kelleher's affidavit and Southwest affidavit that we placed before the court, we showed that he had no relevant knowledge to the antitrust case. And even the conversation he had with Mr. Parker was not relevant to the antitrust case. And then the judge gave them multiple opportunities to come back and controvert that, and they never did. For those reasons, we'd ask that you affirm the district court. Thank you. Thank you. May it please the court, the answer to your Honor's question is on the transcript, page 28, lines 2 to 10, at which the court below said that I agree that the subject matter of the conversation, if it occurred, and we can show that it occurred, would be relevant and that it would not be an undue burden because it is a conversation that only he would be a party to, Mr. Kelleher, rather than Southwest. But I also have to consider the fact that this information is available from less burdensome sources, which are the other two people to the alleged conversation, Mr. Parker for one and Mr. Horton for the other. Two different conversations with Mr. Kelleher. And so what the court is saying is that although it's relevant and although there's practically no burden whatsoever, we were accommodating him in any way that we could, the court below says that the less burdensome availability, the other people to the conversation. And in all due respect, that is an incredible statement with regard to a conversation. Secondly, I would point out to the court in Exhibit B, because you asked this as well, Your Honor, and that is that Exhibit B is Parker's deposition. And if you would go to page 78, you can see what the conversation was about. What it had to do with is the profitability and the impact that that would have on Southwest. And the idea that we just want to grandstand by taking Mr. Kelleher's deposition is hardly – I do not believe that that is any kind of analysis whatsoever. We're doing it because we found a document and he has denied it. But courts can quash if it's perceived to be for annoyance or harassment. Absolutely. This district judge just didn't make that point. No. The court below said that you have other available evidence from the other people in the conversation. I mean dividing witnesses or questioning two witnesses about one conversation goes back to the Book of Daniel. I mean that's where they divide witnesses. And one person gives one story and one person gives another. And it's clear on Exhibit B, page 78, that Mr. Kelleher's affidavit is not true. In addition, I would point out, too, that this meeting was by Mr. Parker designated to be secret. He requested that this request, that Mr. Kelleher keep it confidential, that if he doesn't feel like he should talk about this subject, that he would understand that. Mr. Parker would. Nonetheless, he invites them. They do, in fact, meet. And according to the evidence that I just designated for Mr. Parker, all of which was given to the court below, you can see that Mr. Kelleher's affidavit is not true. And in addition, it is extremely important, we believe, and prejudicial to our underlying case, to show that not only is there a lesson in competition, but the result of usual violations of Section 7 are that it makes it easier for these folks to communicate with regard to the specifics that Judge Haynes has noted. And we know now, counsel says, there's another case against Southwest. Yeah, it's the investigation by the government, and it's a class action of I think there's some hundred lawyers or whatever, because of the agreements when they come out of their IATA meeting, and they decided to keep capacity down, and thereby, of course, increase the pricing. But what we are doing here is we are seeking a deposition of a person who was involved in what we believe to be an important conversation, and that it was purposefully kept secret, and that no one was supposed to talk about it, and that the topic was dangerous. And that if you think that, and even saying, Mr. Parker saying, if you think that maybe we shouldn't talk about this, I'd understand. But in the meantime, I'd appreciate it if you keep it confidential. He also says, as distinguished from the arguments that were made, in the same document, in the same document, he says that this is, after he jokes for a while, then he says, okay, now I have a serious matter that I want to talk about. And then he says what it is. And he wants him to know that you don't have to worry about what Horton said, and you don't have to worry about, and we have what Horton said, what he said to Kelleher and what Kelleher said to him, you don't have to worry about that. And he was opposed to it. Okay. Mr. Alito, if you want to wrap up with one sentence, I'll give you that. It's been a pleasure to have the opportunity to appear before the Fifth Circuit again. Okay. Thank you, sir. We appreciate everybody's arguments, and we appreciate all the arguments today. We have a lot to think about, and we shall do so and adjourn until tomorrow morning.